COLEMAN & BALOGH LLP
ETHAN A. BALOGH, No. 172224
235 Montgomery Street, Suite 1070
San Francisco, CA 94104
Telephone: 415.391.0440
Facsimile: 415.373.3901
eab@colemanbalogh.com

Attorneys for Defendant
MARCO DELGADILLO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MARCO DELGADILLO,<br><br>Defendant. | Case No. 19 Cr. 226 RS<br><br>MARCO DELGADILLO'S SENTENCING MEMORANDUM; OBJECTIONS TO PRESENTENCE REPORT<br><br>Date:  March 17, 2020<br>Time:  2:30 p.m.<br><br>Before the Honorable Richard Seeborg<br>United States District Judge |

**OVERVIEW**

Defendant Marco Delgadillo, by and through his counsel, respectfully submits the following Sentencing Memorandum.  Mr. Delgadillo comes before the Court having been convicted, by guilty plea, of conspiracy to distribute and possess with intent to distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A). *See* ECF 161 (Presentence Report ("PSR")) ¶ 3 (referencing Plea Agreement) and Enclosure (Plea Agreement).

The Sentencing Guidelines, properly calculated, advise a sentence of 46-57 months (Total Offense Level ("TOL") 23, Criminal History Category ("CHC") I)) incarceration.  In contrast, Mr. Delgadillo respectfully contends that the Government and United States Probation miscalculate the Guidelines to advise a sentence of 63-78 months (TOL 26, CHC I).   In that context, United States Probation correctly recognizes the merit of a substantial downward variance, and recommends a sentence of 48 months incarceration.  *See* PSR Sentencing Recommendation (ECF 161 at 19).

Mr. Delgadillo appreciates United States Probation's recognition that there exist facts in mitigation that support a substantially-below Guidelines sentence.  But he also contends that the PSR and the United States have miscalculated the Sentencing Guidelines, specifically the mitigated role adjustment presented in PSR ¶ 17.  In brief, Mr. Delgadillo respectfully contends that the facts of this case merit a four-level reduction for minimal role.  If the Court agrees—and Mr. Delgadillo agrees that it is a fine line between the three-level mitigated role adjustment the Government and United States Probation advocate for, and the four-level mitigated role adjustment Mr. Delgadillo urges—then U.S.S.G. "§ 2D1.1(a)(5) calls for an additional reduction in the base offense level to 32[,]" Plea Agreement at 4, n.1, the TOL then falls to 23, and the Guidelines advise a sentence between 46 and 57 months.

As shall also be discussed below, Mr. Delgadillo's drug addiction and fealty to his older brother led him to transgress the law and serve as his brother's courier on less than one handful of occasions.  But there is much more to Marco Delgadillo.  As the Court shall see, his response

1

to his August 2018 arrest—to send his wife and children to Mexico to shield them from learning about the impending charges and seeing his arrest and prosecution, while allowing him to continue to work and send money to support his family, all the while making repeated check-ins with the state court while the authorities considered the charges against him, and then to accept responsibility earliest and plead guilty—along with all of the factors of this case, merit a substantial variance from the advisory Guidelines, as United States Probation has recognized. Pursuant to *United States v. Booker*, 543 U.S. 220 (2005) and the 18 U.S.C. § 3553(a) factors, Mr. Delgadillo respectfully asks the Court to sentence him to 33 months incarceration (the "recommended sentence"). This recommended sentence, like the one advised by United States Probation, falls in the range of a three-level downward variance from the Advisory Guidelines, properly calculated. As such, the recommended sentence is "sufficient, but not greater than necessary" to account for Mr. Delgadillo's life circumstances and his conduct, role, and mitigation in this case. *Kimbrough*, 552 U.S. 85, 101 (2007).

## LEGAL STANDARDS

"It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Pepper v. United States*, 562 U.S. 476, 487-88 (2011). "Underlying this tradition is the principle that the punishment should fit the offender and not merely the crime." *Id.*

This Court has broad discretion to sentence Mr. Delgadillo outside the advisory Guidelines. After the great sea change occasioned by *Booker*, this Court again stands as the arbiter of a just and proper sentence, empowered and required to "make an individualized assessment" of a just sentence pursuant to the factors presented in 18 U.S.C. § 3553(a). *See Gall v. United States*, 552 U.S. 38, 50 (2007).

Procedurally, however, sentencing proceedings begin by determining the applicable Guidelines range. "In this sense, the Guidelines are the starting point and the initial benchmark, and are to be kept in mind throughout the process." *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (*en banc*). But the Court "may not presume that the Guidelines range is

reasonable" and may not afford the Guidelines any more or less weight than the other section 3553 factors. *Id*. Similarly, the Court may still determine that a Guidelines sentence should not apply "perhaps because (as the Guidelines themselves foresee) the case at hand falls outside the 'heartland' to which the Commission intends individual Guidelines to apply, USSG § 5K2.0, perhaps because the Guidelines sentence itself fails properly to reflect § 3553(a) considerations, or perhaps because the case warrants a different sentence regardless." *Id.* at 991 (internal quotations and citations omitted). In short, the *en banc* court in *Carty* directs that this Court "must make an individualized determination based on the facts." *Id*.

The Court is thus charged to "impose a sentence sufficient, but not greater than necessary, to accomplish the goals of sentencing, including to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant." *Kimbrough*, 552 U.S. at 101 (quotation marks omitted); *see also* 18 U.S.C. § 3553(a). We thus address the section 3553(a) factors in turn, so that the Court may make an individualized assessment of the appropriate sentence for Marco Delgadillo.

## THE SECTION 3553(a) FACTORS

**A.     Section 3553(a)(1).**

Section 3553(a)(1) directs the Court to evaluate "[t]he nature and circumstances of the offense and the history and characteristics of the defendant."

### 1.     The history and characteristics of Marco Delgadillo.[1]

Marco Delgadillo comes before the Court as a 40-year-old man, with a demonstrated work history, who made poor choices to make a little bit of extra money by serving as his brother's courier on a handful of occasions. Drug addiction combined with filial fealty motivated his poor choice, and that poor choice has changed his life irrevocably. In sum, Marco's brother Jose dealt drugs, which Marco believed focused on cocaine. Marco, unfortunately, abused cocaine, and his brother had a steady supply. To obtain a discount on

---

[1] In this section, we differentiate between the Delgadillo brothers by using their first names. We return to the more formal "Mr. Delgadillo" thereafter.

3

cocaine and earn $500, Marco agreed to pick up money from a buyer who owed it to Jose; he did that twice.  Then, on one occasion, Jose asked him to deliver drugs to a different individual at the same time he would pick up money owed to Jose.  His fourth and final trip was a delivery, the planning for which the Government intercepted on a wiretap, and the execution of which the Government's agents surveilled and then disrupted.  In brief, Jose called Marco at work and asked him to drive a load north after his work day: the load contained approximately 18 pounds of methamphetamine, although Marco thought it was cocaine, and thought the weight was lower.[2]

As directed by the investigating federal agents, state court officers executed a traffic stop, searched the vehicle, recovered the contraband, and arrested Marco.  *See generally* ECF No. 76.  Thereafter, the officers provided Marco a court date in Santa Rosa to address the impending charges, and month after month, from the August 2018 interception until his April 30, 2020 arrest on this indictment, Marco Delgadillo consistently appeared at every court date, for when he appeared, he was told no charges had yet been filed, and that he should return in some weeks' time to face the charges under consideration.[3]  Even after he was arrested in this case, he traveled to state court to make his final court date, at which time he learned that no state charges would be filed, and he would be called upon to address this federal case only.

None of this conduct is laudable, and reflects an all-too-common decision by some struggling to succeed and struggling with drug addiction.  But none of his conduct is aggravated either; rather, Marco's limited role and unfortunate motivations, as well as the opportunity provided by his brother, without which Marco Delgadillo would never had committed the crime at bar, demonstrate that his case is mitigated.

---

[2] Mr. Delgadillo addressed these facts with the United States at his safety-valve interview.  We understand that the Government deemed his account truthful, and has recommended application for the safety valve as a result.

[3] This pattern arose from the same motivations that led the federal agents to direct a wall stop rather than arrest Marco themselves: the federal authorities wanted the broader investigation underlying this indictment to remain in the covert stage until they were ready to issue the indictment and arrest the broader array of people named in the indictment.  *See e.g.*, ECF No. 76 at 8:1-9:22.

As the PSR reflects, Marco, although a United States citizen, enjoyed a good childhood in Mexico. PSR ¶¶ 32-33. He excelled at soccer, and began a professional career that held promise for a brighter future. Unfortunately, his minor teenage rebellion of getting tattooed and ear piercings led to a harsh outcome: his coach kicked him off the team. In this case, idle feet were the devil's playground, and Marco quickly turned to drugs, and had a particular affinity for how he felt when using cocaine. Despite those circumstances, Marco married, had children, and dedicated himself to his family. Although lacking an education and highly-valued skills, Marco worked steadily in a variety of low-level jobs, as documented in the PSR. *See* PSR ¶¶ 44-49. As reflected in the letters of support which we do not recount here, but urge the Court to review, his family and close friends relate a uniform picture of how they know Marco: as a hard working family man, with a strong moral compass, who stumbled, in part because of his drug addiction.

Marco's response to this prosecution further demonstrates the good in him: he sent his family away, both to shield them from the impending prosecution and to have the money he earned go farther to care for his family in Mexico than it could in California, while all the while he remained and made all court appearances because he knew he had to face the music. These are the attributes of a good man, and stand in sharp contrast to his brother's approach. So too, Marco's decision to plead guilty early and accept responsibility for his poor choices likewise demonstrate a man worthy of the recommended sentence.

At bottom, the history and characteristics of Marco Delgadillo reflect a hard-working family man, whose short foray into criminality, linked directly to his brother's lifestyle and his cocaine addiction, has upended his life and led to this devastating moment: sentencing in a federal criminal case. We respectfully contend that these circumstances fully support imposition of the recommended sentence.

### 2. The nature and circumstances of the offense.

Section 3553(a)(1) also directs the Court to evaluate the nature and circumstances of Mr. Delgadillo's offense. Simply put, the controlled substances offenses at bar is serious, but Mr. Delgadillo's role is mitigated. The drug activities in this case did not involve weapons or

5

violence or threats of violence, which appear far too often in drug cases of a similar scope. So too, the scope of Mr. Delgadillo's conduct is accounted for by the extraordinarily high base offense level applicable to the amount of contraband involved. Finally, United States Probation and the Government each recognize that Mr. Delgadillo's short-term role as a courier merits a mitigated role reduction, even if the parties dispute whether is role qualifies as minimal or nearly minimal.

As a result, we respectfully contend that the section 3553(a)(1) factors support imposition of the recommended sentence.

**B. Section 3553(a)(2).**

Section 3553(a)(2) directs the Court to evaluate a sentence sufficient to "(A) reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." As the Supreme Court in *Kimbrough* made plain, the Court should fashion "a sentence sufficient, but not greater than necessary" to meet these goals. 552 U.S. at 101.

Mr. Delgadillo recommends a sentence of 33 months incarceration. Mr. Delgadillo respectfully submits that this recommended sentence is "sufficient, but not greater than necessary" to satisfy each of the section 3553(a)(2) factors.

While the offense is serious, they are mitigated by Mr. Delgadillo's extraordinary acceptance of responsibility, and the circumstances that led to his diversion into criminality. In addition, the debilitating consequence of family separation, since August 2018 and into the foreseeable future, stands as a punishment in and of itself. Mr. Delgadillo's genuine contriteness is perhaps best summed up by his reflection that he "stole part of his [eldest son's] childhood because of this mistake." PSR ¶ 35. His deep guilt about how his choices harmed his family weighs heavily on Mr. Delgadillo, and he has a demonstrated a sincere recognition— albeit an all-too-late epiphany—that his prior straight-and-narrow lifestyle presents the only choice to take going forward.

While Mr. Delgadillo can steadfastly assure this Court that he will abide the law and needs no further deterrence, the recommended sentence will further that goal by the imposition of a lengthy term of incarceration for a first-time non-violent drug offender, followed by a lengthy term of supervision to ensure he keeps to the straight path. With due consideration to the factors set forth above, Mr. Delgadillo respectfully submits that he presents no threat of future criminality. Accordingly, Mr. Delgadillo respectfully submits that the recommended sentence is "sufficient, but not greater than necessary" to satisfy each of the section 3553(a)(2) factors.

**C.     Sections 3553(a)(3), 3553(a)(4), and 3553(a)(5).**

Sections 3553(a)(3) through (a)(5) direct the Court to assess the kinds of sentences available statutorily and pursuant to the United States Sentencing Guidelines, as well as the policy statements and amendments issued by the United States Sentencing Commission. This section gives effect to *Kimbrough*'s directive for this Court to consider the advisory Guidelines like the rest of the section 3553(a) factors. In this case, Mr. Delgadillo respectfully contends that the PSR calculates the Sentencing Guidelines incorrectly.

**1.     Mitigated Role.**

The Guidelines dispute at bar concerns the applicability of either a four-point or a three-point downward adjustment for mitigated role. *See* U.S.S.G. § 3B1.2. While the Government and United States Probation urge a three-point downward adjustment based on a contention that Mr. Delgadillo's role falls between a minor participant and a minimum participant, *see* PSR ¶ 17, Plea Agreement ¶ 7(c), Mr. Delgadillo respectfully advocates for a four-level reduction as a minimal participant. *See* U.S.S.G. § 3B1.1(a).

In sum, Marco Delgadillo's role as a courier was extraordinarily limited, including limited in time. When compared to the other participants in this case, the facts surrounding Mr. Delgadillo's conduct warrants a finding that he was a minimal participant. As the Guidelines Commentary teaches:

> Subsection (a) applies to a defendant described in Application Note 3(A) who plays a minimal role in the criminal activity. It is intended to cover defendants who are plainly among the least

7

> culpable of those involved in the conduct of a group. Under this provision, the defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as minimal participant.

*See* U.S.S.G. § 3B1.2, Appl. Note 4.[4]

We respectfully contend that Mr. Delgadillo's role is in line with a minimal participant when compared to Jose Delgadillo (the supplier), as well as Torres-Garcia and Lorenzo Lee (the distributers). Importantly, Mr. Delgadillo didn't even know that it was methamphetamine he was transporting on the date of his August 2018 arrest, a circumstance consistent with a minimal participant adjustment.

On this point, it is important to consider Amendment 794 and *United States v. Diaz*, 884 F.3d 911, 914 (9th Cir. 2018). *Diaz* made clear that, after the Sentencing Commission enacted Amendment 794, when assessing section 3B1.2's applicability, the court must compare the defendant to other participants in the same criminal scheme, and *not* to other "hypothetical [or] typical offenders" participating in similar crimes. *Diaz*, 884 F.3d at 915. When one applies that prism, it is clear that Marco's role was minimal when compared with Jose Delgadillo, Lee, and Torres-Garcia.

> Indeed, United States Probation recognizes that the minimal participant adjustment:
> is applicable to a defendant who is least culpable of those involved in the conduct of the group and has a lack of knowledge of the scope and structure of the enterprise.

PSR Addendum ¶ 4. Those circumstances apply directly to Mr. Delgadillo in this case. In contrast, United States Probation ultimately lands on a three-level downward adjustment, instead of four levels, because "he clearly delivered a large amount of drugs (18 pounds)." *Id.* Respectfully, that factual circumstance does *not* inform the applicable role analysis. Moreover, it ignores that the Guidelines account fully for that circumstance elsewhere: in the setting of the base offense level. The Court should not adopt that errant approach and should apply section 3B1.2 by its terms. Upon such analysis, the Court should find that Marco Delgadillo served as a minimal participant in the charged offenses.

---

[4] The commentary in the Application Notes is binding on this Court. *See Stinson v. United States*, 508 U.S. 36 (1993).

For these reasons, the Court should apply a Base Offense Level of 32 and apply a four level reduction for role, resulting in a Total Offense Level of 23 and an advisory Guidelines Range of 46-47 months.

**D.    Section 3553(a)(6).**

Section 3553(a)(6) directs the Court to consider the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct. Mr. Delgadillo respectfully contends that the recommended sentence thus avoids sentencing disparities within the meaning of 18 U.S.C. § 3553(a)(6).

**E.    Section 3553(a)(7).**

The last section 3553 factor requires the Court to consider "the need to provide restitution to any victims of the offense." It is inapplicable here.

**OBJECTIONS TO PRESENTENCE INVESTIGATION REPORT**

For the reasons set forth below, Mr. Delgadillo respectfully objects to the PSR.

**Objection No. 1:**

Mr. Delgadillo respectfully objects to the PSR's calculation of the applicable role adjustment pursuant to U.S.S.G. § 3B1.2(b), *see* PSR ¶ 17, and for the reasons set forth above, which he incorporates by reference, he urges the Court to award a four-level adjustment for minimal participant.

**CONCLUSION**

For the reasons set forth above, Defendant Marco Delgadillo respectfully asks the Court to impose the recommended sentence.

Respectfully submitted,

DATED: March 10, 2020          COLEMAN & BALOGH LLP

*/s/ E A Balogh*
ETHAN A. BALOGH

Attorneys for Defendant
MARCO DELGADILLO